```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION


J. PAUL CLINTON and
STOKES and CLINTON, P.C.                               PLAINTIFFS

VS.                         CIVIL ACTION NO. 3:13-cv-871(DCB)(MTP)

W. RICHARD JOHNSON, SR.;
DAVID M. SESSUMS;
VARNER, PARKER & SESSUMS, P.A.;
and TAMRA WARNOCK                                      DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on motions for summary judgment filed by defendants David M. Sessums ("Sessums") and Varner, Parker & Sessums, P.A. ("Varner, Parker & Sessums")**(docket entry 94)**, Tamra Warnock ("Warnock")**(docket entry 95)**, and W. Richard Johnson, Sr. ("Johnson")**(docket entry 96)**.  Also before the Court is a motion for summary judgment on the defendants' counterclaim, filed by plaintiffs J. Paul Clinton ("Clinton") and Stokes and Clinton, P.C. ("Stokes & Clinton") **(docket entry 103)**.  Oral argument was held on July 17, 2014.  Having carefully considered the motions and responses, the memoranda and oral argument of the parties, as well as the applicable law, and being fully advised in the premises, the Court finds as follows:

According to the plaintiffs' Complaint, plaintiff J. Paul Clinton, a resident citizen of Alabama who is licenced to practice law in Mississippi, sued and took a default judgment for his client, State Farm Mutual Automobile Insurance Company ("State

Farm"), against defendant Warnock in Warren County, Mississippi, on November 27, 2006. Compl. ¶ 12 & Ex. A. The default judgment related to a car accident in which Warnock was alleged to have been involved. Compl. ¶ 12 & Ex. A. Shortly thereafter, defendant Johnson, one of Warnock's attorneys, moved to set aside the judgment and a hearing was set on the matter. Compl. ¶ 13. In response to Warnock's Motion, wherein she averred that she was not driving the car when the accident occurred, Compl. Ex. A ¶ 4, Clinton sent a letter and proposed order to Johnson, stating that State Farm would agree to set aside the default judgment and dismiss Warnock from the suit if she would stipulate to certain facts regarding her involvement in the accident. Compl. ¶ 14, 17. Warnock declined State Farm's offer and chose instead to proceed with the hearing. Compl. ¶ 15. At the hearing, Warnock provided testimony supporting her claim that she could not be liable for the accident, and the trial court set aside the judgment. Compl. ¶ 18. Another of Warnock's attorneys at the hearing, defendant Sessums, then moved for sanctions against Clinton, but the trial court declined the request. Compl. ¶ 19 & Ex. C.

Following the hearing, Clinton claims that he approached Johnson in an effort to "promote civility and professional courtesy." Compl. ¶ 22. According to Clinton, Johnson rebuffed his good-faith attempt to smooth over the matter and informed him that another "similar case" was pending in Hinds County. Compl. ¶

23.  Clinton then went to the law office of Varner, Parker & Sessums to speak with Sessums.  Clinton states that Sessums was receptive to his overtures and agreed to resolve any similar disputes out of court before filing any motions for sanctions. Coml. ¶ 24.  Clinton states he believed the matter had been resolved, but on September 26, 2007, he learned from various clients, family, and friends that the Clarion Ledger was running an advertisement in which Johnson was soliciting potential clients who had been treated similarly to Warnock with the intention of filing a class-action lawsuit against Clinton. Compl. ¶ 29.  Through some investigation, Clinton discovered that Varner, Parker & Sessums had paid for the advertisement.  Compl. ¶ 30.  Upon discovering this information, Clinton contacted both Johnson and Varner, Parker & Sessums to inform them that he believed their conduct violated Mississippi Rule of Professional Conduct 7.2(e), which prohibits a lawyer from directly or indirectly paying for the cost of an advertisement for someone in another firm. Compl. ¶ 31.  Sessums responded that Johnson had been associated with the firm in the matter and that the advertisement would continue to run. Compl. ¶¶ 33, 34.  In response, Clinton retained counsel and was successful in getting the advertisement permanently enjoined.  Compl. ¶ 38.

Subsequently, Warnock, represented by Johnson and Varner, Parker & Sessums, filed a class-action Racketeer Influenced and Corrupt Organizations Act ("RICO") lawsuit in this Court against

3

Clinton and his law firm, which included allegations that Clinton committed wire and mail fraud in his communications with Warnock. Compl. ¶¶ 39, 40. The RICO claim survived Clinton's motion to dismiss, Warnock v. State Farm Mut. Auto. Ins. Co., 2008 WL 4594129 (S.D. Miss. Oct. 14, 2008), and Clinton spent the next three years defending Warnock's RICO allegations. Compl. ¶ 42. During the course of discovery, Warnock testified that she had received no letters or phone calls from Clinton, his law firm, or his client, an occurrence necessary for the survival of her mail and wire fraud claims. Compl. ¶ 43. Clinton then moved for summary judgment, which this Court granted because Warnock could not produce any evidence of the commission of two or more incidents of fraud and thus could not show a pattern of racketeering activity. Compl. ¶ 46; Warnock v. State Farm Mut. Auto. Ins. Co., 833 F. Supp. 2d 604, 608-09 (S.D. Miss. June 15, 2011). Clinton avers that not only did he spend $789,429.44 on defending a meritless case, but also his malpractice premium increased 300% as a result of the lawsuit. Compl. ¶¶ 46, 47.

Based on these allegations, Clinton brought seven claims against the defendants. In a previous Memorandum Opinion and Order, Clinton v. Johnson, 2013 WL 870361 (S.D. Miss. March 7, 2013), the Court dismissed four of the claims, leaving only malicious prosecution, abuse of process, and intentional infliction of emotional distress. Clinton seeks the following compensatory

damages: fees incurred in defending the RICO lawsuit; the cost of the increase in his malpractice insurance premium; compensation for the harm to his reputation; and compensation for general pain, anguish, and emotional distress suffered as a result of the lawsuit.  Compl. ¶¶ 75.  He also seeks punitive damages, alleging willful and malicious conduct on the part of the defendants. Compl. ¶ 76.

The defendants have filed an Amended Counter-Claim (docket entry 112) against the plaintiffs for malicious prosecution in the bringing of the plaintiffs' Complaint.  The elements of the tort of malicious prosecution under Mississippi law are: (1) the institution of a proceeding (2) by, or at the insistence of, the defendant, (3) the termination of such proceedings in the plaintiff's favor, (4) malice in instituting the proceedings, (5) want of probable cause for the proceedings, and (6) the suffering of injury or damage as a result of the proceedings.  McClinton v. Delta Pride Catfish, Inc., 724 So.2d 889, 891 (Miss. 1998).  All six of these elements must be proven by a preponderance of the evidence.  Van v. Grand Casinos of Mississippi, Inc., 724 So.2d 889, 891 (Miss. 1998).

As to the third element (termination of proceedings in the claimant's favor), "[i]t is axiomatic that a claim for malicious prosecution does not accrue until the day the underlying proceeding has been terminated."  Orix Fin. Servs. v. Allied World Assurance

Co., 2005 WL 1923123, *3 (N.D. Miss., Aug. 10, 2005). Because there has been no final judgment in the proceeding brought by the plaintiffs, the defendants' malicious prosecution claim is premature and must be dismissed without prejudice. Id. The plaintiffs' motion for summary judgment is therefore moot.

The defendants' motion for summary judgment asserts, first of all, that the plaintiffs' malicious prosecution claim fails as a matter of law as to both the attorney defendants and their client, Warnock. Specifically, the defendants claim that they had probable cause to bring suit against Clinton, and that they were not motivated by malice.

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A contested fact is "material" when it has the potential to change the outcome of the case. Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue is

"genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Id.  A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-movant must "designate specific facts showing the existence of a genuine issue for trial."  Anderson, 477 U.S. at 250.  "The

7

mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"The [Mississippi] supreme court has pronounced that malicious prosecution actions must be 'managed with great caution.'" Funderburk v. Johnson, 935 So.2d 1084, 1097 (Miss. Ct.App. 2006)(citation omitted).  This is because "the threat of a malicious prosecution suit may deter citizens from attempting to bring wrongdoers to justice, necessitating a cautious approach to these suits." Id.

"Probable cause in the context of a malicious prosecution case requires the concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief." Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 47 F.Supp.2d 774, 778 (S.D. Miss. 1998)(citations omitted). "Probable cause is determined from the facts apparent to the observer when the prosecution is initiated." Owens v. Kroger Company, 430 So.2d 843, 846 (Miss. 1983).  When the facts are undisputed, the court decides whether probable cause existed. Nassar v. Concordia Rod and Gun Club, Inc., 682 So.2d 1035 (Miss. 1996).  The term "malice" refers to the defendant's objective in bringing the proceeding against the plaintiff.  It "does not refer to mean or evil intent as a layman might ordinarily think." Trilogy Comm., 47 F.Supp.2d at 780.  It is a term of art that "refers to the defendant's objective, not his attitude." Strong v. Nicholson, 580 So.2d 1288, 1293 (Miss. 1991).

In this case, the defendants have shown that they were aware

9

of a statewide pattern of conduct between Stokes and Clinton, in Alabama, and State Farm, in Illinois, and reasonably believed that these two separate entities were operating together as an enterprise to obtain an unlawful purpose, i.e, naming parties in lawsuits who were not liable in an effort to obtain money from them.  The defendants were aware that Warnock had been sued by State Farm, represented by Clinton, and that others in similar circumstances had been sued by the same entities.  They also had reason to believe Stokes and Clinton and/or State Farm used the U.S. Mails in furtherance of the alleged scheme.

Ultimately, the RICO suit against Clinton and Stokes and State Farm was dismissed.  However, this Court need not determine whether the grounds raised by the defendants in their suit against the plaintiffs "were legally correct and of unquestionable validity." Presley v. South Central Bell Telephone Co., 684 F.Supp. 1397, 1401 (S.D. Miss. 1988).  All that is necessary is that the claims asserted were arguably cognizable based on applicable legal principles.  Id.  In this Court's opinion, the claims put forward by the defendants in their RICO action, based on the facts they then believed existed, were not unreasonably asserted, even if they were ultimately found to be without merit.  They were at least arguably valid, which leads the Court to conclude that, as a matter of law, the defendants had probable cause to institute the RICO action.

The plaintiffs have produced no evidence to contradict this finding. Moreover, they have failed to present a particularized argument that a genuine issue of material fact exists regarding malice or probable cause. Instead, they argue the merits of the underlying RICO action. The defendants may have been ultimately incorrect in the RICO suit, but their actions do not show that they acted with malice. See Funderburk, 935 So.2d at 1097-98 (affirming directed verdict for insufficient evidence of malice). "In a civil suit, a plaintiff is always seeking his own ends. For this reason, more latitude is generally permitted respecting motivation in the bringing of civil suits for purposes of the malice issue in malicious prosecution cases." Trilogy Comm., 47 F.Supp.2d at 780. The plaintiffs have simply not proven that the defendants acted with malice, nor have they proven that the defendants lacked probable cause. Their malicious prosecution claim is without merit.

The plaintiffs also bring a claim for abuse of process. An abuse of process claim requires the plaintiff to "prove the following elements by a preponderance of the evidence: (1) the defendant made an illegal use of process, (2) the defendant had an ulterior motive for exercising such illegal use of process, and (3) damage resulted from the perverted use of process." Miles v. Paul Moak of Ridgeland, Inc., 2012 WL 4075169, *4 (Miss. Ct.App. Sept. 18, 2012)(citation omitted). The difference between malicious

11

prosecution and abuse of process is that "malicious prosecution" concerns maliciously causing process to issue, while "abuse of process" concerns the improper use of process after it has been issued.  Dunagin v. City of Oxford, Miss., 489 F.Supp. 763 (N.D. Miss. 1980).

The plaintiffs have made no demonstration or argument as to what improper use of process occurred <u>after</u> the initial process (summons) was issued.  It is the intentional use of legal process for an improper purpose which is incompatible with the lawful function of the process by a person having an ulterior motive in doing so, with corresponding damages.  McCornell v. City of Jackson, Miss., 489 F.Supp.2d 605 (S.D. Miss. 2006).  In this case, the only process issued was the initial summons when the RICO action was initiated.  The plaintiffs point to no perverted use of process after the summons was issued, and their claim is therefore without merit.  <u>See</u> <u>Austin Firefighter's Relief and Retirement Fund v. Brown</u>, 760 F.Supp.2d 662, 676-77 (S.D. Miss. 2010)(simply filing suit and continuing to prosecute it cannot form the basis for an abuse of process claim).

As for the plaintiffs' intentional infliction of emotional distress claims, the underlying actions by the defendants all occurred more than three years before this action was commenced on June 15, 2011 (Clarion Ledger advertisement in 2007; motion for sanctions in Warren County case prior to Clarion Ledger ad in 2007;

12

RICO action in January of 2008). Thus, both Mississippi's one year and three year statutes of limitation bar the claims asserted by the plaintiffs. Furthermore, "[n]o continuing duty exists to force an attorney to abandon a claim if it later appears to be without merit." Rose v. Tullos, 994 So.2d 734, 739 (Miss. 2008).

The only avenue left for the plaintiffs is to prove conduct "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." Jones v. Mullen, 100 So.3d 490 (Miss. Ct.App. 2012)(citing Langston v. Bigelow, 820 So.2d 752 (Miss. Ct.App. 2002)). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not enough to support a claim for intentional infliction of emotional distress. Id.

"Liability for intentional infliction of emotional distress will not be imposed upon an actor doing nothing more than exercising his legal rights." Senseney v. Mississippi Power Co., 914 So.2d 1225, 1230 (Miss. Ct.App. 2005). In this case, the defendants were simply exercising their legal rights in running a newspaper ad and filing legal proceedings. The plaintiffs have not shown any act by the defendants so egregious as to evoke outrage or revulsion, nor any act so extreme in degree as to go beyond all possible bounds of decency or be regarded as atrocious and utterly intolerable in a civilized society. Their claims for intentional

13

infliction of emotional distress therefore fail.

Accordingly,

IT IS HEREBY ORDERED that the defendants' Amended Counter-Claim (docket entry 112) is dismissed without prejudice as premature;

FURTHER ORDERED the plaintiffs' motion for summary judgment **(docket entry 103)** is MOOT;

FURTHER ORDERED that the motions for summary judgment filed by defendants David M. Sessums and Varner, Parker & Sessums, P.A. **(docket entry 94)**, Tamra Warnock **(docket entry 95)**, and W. Richard Johnson, Sr. **(docket entry 96)** are GRANTED, and this civil action is dismissed with prejudice.

A Final Judgment dismissing the plaintiffs' Complaint with prejudice, and dismissing the defendants' Amended Counter-Claim without prejudice, shall follow.

SO ORDERED, this the 29th day of September, 2014.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE